**The below described is SIGNED.**

**Dated: July 26, 2006**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number: 06-20572 |
|---|---|
| **Dennis P. and Melissa G. Ericksen,** | Chapter 13 |
| Debtors. | |

## MEMORANDUM DECISION

Before the Court is Dennis and Melissa Ericksen's (Debtors) objection to the proof of claim of WFS Financial, Inc. (WFS) and the Debtors' motion for confirmation of their chapter 13 plan. The Debtors object to WFS's proof of claim on the basis that WFS does not have a purchase money security interest in its collateral meaning the Debtors can cram-down WFS's secured claim under 11 U.S.C. § 506.[1] The Court concludes that WFS does have a purchase money security interest in its collateral to the extent that the loan proceeds were used to finance everything associated with the purchase of the collateral except for the purchase of an insurance

---

[1] All future statutory references are to title 11 of the United States Code unless otherwise indicated.

policy. Therefore, the Debtors cannot cram down[2] WFS's claim to the extent that WFS has a purchase money security interest in the collateral, and the Debtors' proposed plan does not comply with § 1325(a).

## I. BACKGROUND

On May 16, 2005, the Debtors purchased a 2004 Dodge Stratus (Stratus) from National Auto Plaza Southtown (NAPS). The Debtors financed the purchase of the Stratus with a loan from NAPS. The amount financed was $18,099.01 (loan proceeds), some of which the Debtors used to pay other charges including sales and property taxes on the Stratus, a document preparation fee, a credit report fee, and $599 for an insurance policy.

At the time of the purchase, the Debtors signed a contract and security agreement with NAPS granting it a security interest in the Stratus. Thereafter, NAPS assigned its security interest to WFS. WFS perfected its security interest in the Stratus by notation on the Stratus' title, as required by the Utah Motor Vehicle Act.[3] There is no dispute that the Stratus was purchased within 910 days preceding the filing of the Debtors' petition and that the Debtors used the Stratus for personal use. As such, the Stratus is appropriately classified as a so-called "910-day vehicle."[4]

The Debtors filed for bankruptcy on March 2, 2006. WFS timely filed a proof of claim in the amount of $17,653.22 and declared its status as a secured creditor. The Debtors have

---

[2]    A "cram down" is the process by which the debtor is able to retain the collateral over the creditor's objection to the proposed chapter 13 plan. The debtor does this by bifurcating the creditor's secured claim under § 506 and paying the secured portion at the value of the collateral, rather than the actual amount owed, with the difference then being treated as an unsecured claim. *See Assocs. Commer. Corp. v. Rash*, 520 U.S. 953, 957 (1997).

[3]    Utah Code Ann. § 41-1a-101 (2006) et seq.

[4]    *See* § 1325(a)

2

proposed a chapter 13 plan in which they assert that the value of the Stratus is $12,200, and they propose to pay WFS this amount arguing that § 506 allows them to cram down WFS's claim. WFS argues that it does have a purchase money security interest in the Stratus so § 1325(a) prohibits the Debtors from cramming down its claim.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

## III. ANALYSIS

As part of the changes made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Congress added an additional paragraph to the end of § 1325(a) (the "hanging paragraph"). The hanging paragraph states that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 506 allows a debtor to bifurcate the secured claim of a creditor by cramming down the secured portion of the claim to the value of the collateral. The remaining balance is then paid as an unsecured claim.[5] The hanging paragraph, however, prevents a debtor from cramming down a secured claim where the creditor has a purchase money security interest in collateral that is

---

[5] *See* § 506(a)(1)

either a so-called 910-day vehicle or "any other thing of value" purchased within one year preceding the filing of the debtor's petition.[6]

The Debtors advance three arguments in support of their position that they can cram down WFS's proof of claim: (1) WFS does not have a purchase money security interest because the security agreement does not specifically state that a purchase money security interest is being granted; (2) the other charges financed in the transaction at issue negate any purchase money security interest WFS may have had; and (3) the Utah Code specifically precludes a creditor from having a purchase money security interest in a motor vehicle. The court will address each argument in turn.

### A. The Security Agreement Does Not Need to Specifically State that a Purchase Money Security Interest is Being Granted

The Debtors contend that WFS cannot have a purchase money security interest in the Stratus because the security agreement the Debtors signed does not affirmatively grant such an interest. The security agreement only uses language that refers to a "security interest" without the words "purchase money" so, the Debtors argue, WFS does not have a purchase money security interest in the Stratus. The Court disagrees.

A purchase money security interest does not arise from any specific language in the security agreement but by virtue of the relationship between the collateral securing the debt and the use of the proceeds that created the debt. Section 70A-9a-103(2) of the Utah Uniform Commercial Code[7] sets forth the requirements for when a security interest is classified as a purchase money security interest. It states that "[a] security interest in goods is a purchase

---

[6] *See* § 1325(a) hanging paragraph.

[7] Utah Code Ann. §§ 70A-9a-101 (2006) et seq.

4

money security interest[] to the extent that the goods are purchase money collateral with respect to that security interest."[8] Purchase money collateral are "goods or software that secures a purchase money obligation incurred with respect to that collateral."[9] A purchase money obligation is "an obligation of an obligor incurred . . . for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."[10] A security interest that meets these definitions is a purchase money security interest whether or not the security agreement specifically states that it is such. WFS's security interest meets these definitions and is appropriately classified as a purchase money security interest by operation of law. Just because the security agreement the Debtors signed does not specifically state that they are granting the creditor a purchase money security interest does not mean that WFS's security interest cannot have purchase money status.

    **B.**    **The Use of the Loan Proceeds to Purchase Other Items Does Not Defeat WFS's Purchase Money Security Interest**

The Debtors argue that because they used the loan proceeds to pay for other charges WFS cannot have a purchase money security interest. The Debtors' argument relies on the so-called "transformation rule" followed in some jurisdictions that states that purchase money status is destroyed where the collateral secures more than its price.[11] In essence, the argument is that when the loan proceeds are used to acquire both purchase money and non-purchase money

---

    [8]    Utah Code Ann. § 70A-9a-103(2)(a).

    [9]    Utah Code Ann. § 70A-9a-103(1)(a).

    [10]    Utah Code Ann. § 70A-9a-103(1)(b).

    [11]    *See Billings v. Avco Colo. Indus. Bank (In re Billings)*, 838 F.2d 405, 407 (10th Cir. 1988) (summarizing those courts that have followed the transformation rule).

collateral, the entire security interest is transformed into a non-purchase money security interest. In this case, the Debtors argue that since they used the loan proceeds to pay for additional charges—such as taxes and the insurance policy—that if WFS did have a purchase money security interest it has been transformed into a non-purchase money security interest. Therefore, they conclude, the hanging paragraph does not prevent the cram down of WFS's secured claim.

WFS, on the other hand, argues that the "dual status rule" applies. The dual status rule states that "a security interest may be a purchase money security interest to some extent and a non-purchase money security interest to some extent."[12] Under this rule, purchase money status is not destroyed when collateral secures more than its price. Rather a purchase money security interest exists to the extent that loan proceeds were used to purchase the collateral.[13] If loan proceeds were also used to purchase other items the creditor's security interest is denied purchase money status only to the extent that loan proceeds were so used.

As the Tenth Circuit Bankruptcy Appellate Panel has recently stated, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, state law determines the nature of the debtor's interest."[14] Therefore, the Court must look to state law to determine whether to apply the dual status or transformation rule.

Utah courts have never decided which rule the jurisdiction follows so this Court must look to other sources for a determination of this issue. The Tenth Circuit Court of Appeals

---

[12] U.C.C. § 9-103 Official Comment 7.

[13] *See* id.

[14] *G & B Aircraft Mgmt. v. Smoot (In re Utah Aircraft Alliance)*, 342 B.R. 327, 333 (2006) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)) (internal citations omitted).

("Tenth Circuit") has rejected the transformation rule in favor of the dual status rule.[15]  The Court has reviewed *Billings* carefully and finds its reasoning persuasive.  Particularly persuasive is the Tenth Circuit's explanation that the transformation rule "discourages creditors who have purchase money security interests from helping their debtors work out of financial problems without bankruptcy and without surrendering the collateral securing the debt."[16]  In view of this reasoning and the fact that no other state in the Tenth Circuit appears to have followed the transformation rule which might be helpful to the Court, this Court elects to apply the dual status rule to this transaction.

Application of the dual status rule to this case means that only part of WFS's secured claim has purchase money status.  As Official Comment 3 to U.C.C. § 9-103 makes clear, the definition of "purchase money obligation" demonstrates that the "price of the collateral" may include additional charges that were "incurred in connection with acquiring rights in the collateral."  These include things like "sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit . . ."[17]  and other such charges.  The Court finds that the amounts the Debtors paid for sales and property taxes, the document preparation fee, and the credit report fee would fall into this category and are part of WFS's purchase money security interest.  WFS admitted at the hearing on this matter, however, that it would have sold the Stratus to the Debtors even if they had not purchased the insurance policy.  Therefore, the insurance policy would not fall into this category and this portion of WFS's security interest

---

[15]     *See Billings*, 838 F.2d at 409 (stating that every federal court that has applied their understanding of the laws of the states of the circuit have rejected the transformation rule).

[16]     Id.

[17]     U.C.C. § 9-103 Official Comment 3.

does not have purchase money status. In short, WFS does not have a purchase money security interest to the extent that the loan proceeds were used to purchase the insurance policy. WFS does have a purchase money security interest to the extent that the loan proceeds were used to finance everything else associated with the purchase of the Stratus.

### C. Creditors Can Have Purchase Money Security Interests in Motor Vehicles in Utah

Finally, the Debtors argue that since the Motor Vehicle Act regulates the perfection of a security interest in a motor vehicle, and the Motor Vehicle Act does not provide for purchase money security interests, a creditor can never have a purchase money security interest in a motor vehicle in Utah. This same argument was recently before Judge Boulden in *In re Curtis* ___ B.R. ___ No. 06-20001 (Bankr. D. Utah July 11, 2006). In that opinion, Judge Boulden explained that it is the UCC that regulates the creation and attachment of security interests in motor vehicles. Therefore, Judge Boulden held, a creditor can have a purchase money security interest in a motor vehicle in Utah. This Court agrees with the analysis and decision of Judge Boulden's opinion in *In re Curtis* and, therefore, also holds that a creditor may have a purchase money security interest in a motor vehicle under Utah law.

### IV. CONCLUSION

The security agreement that the Debtors signed states that they are granting a security interest to NAPS, which then assigned its interest to WFS. The security interest was secured by the Stratus, which was purchased using the loan proceeds. The security interest the Debtors granted to WFS, therefore, is classified as a purchase money security interest under Utah Code Ann. § 70A-9a-103 to the extent that the Debtors used the loan proceeds to purchase everything associated with their acquisition of the Stratus except for the insurance policy. The fact that the

Debtors used the loan proceeds to pay for other charges does not defeat WFS's purchase money status.  With the exception of the insurance policy, all these other charges allowed the Debtors to obtain rights in the Stratus and are included in WFS's purchase money security interest in the Stratus.  Since the Stratus is a 910-day vehicle, WFS's claim, to the extent that it relates to its purchase money security interest, may not be crammed down.  The Debtors' objection to WFS's claim is overruled and their plan is denied confirmation without prejudice for failure to comply with § 1325(a).  The Debtors may submit a new plan consistent with this opinion.  An order will issue contemporaneously herewith.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

David T. Berry
Berry and Tripp, P.C.
5296 Commerce Drive, #200
Salt Lake City, UT 84107
    *Attorney for Debtor*

Robert W. Hadley
7390 South Creek Road #201
Sandy, UT 84093
PO Box 900790
Sandy, UT 84090-0790
    *Attorney for WFS*

J. Vincent Cameron
47 West 200 South
Suite 600
Salt Lake City, UT 84101
    *Trustee*